IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LEVI STRAUSS AND COMPANY,

Plaintiff

v.

M/V "PHOENIX SPIRIT," etc., et al.,

Defendants

MARINE EXPRESS, INC.,

Intervenor-Plaintiff

v.

M/V "PHOENIX SPIRIT," etc., et al.,

Defendants

COLBRO SHIP MANAGEMENT COMPANY LIMITED,

Intervenor-Plaintiff

v.

LEVI STRAUSS AND COMPANY,

Plaintiff-Intervenor's Defendant

v.

WILLIAM J. COLEMAN,

Third-Party Defendant

CIVIL 96-2190 (JAG)

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on defendant Levi Strauss' motion for summary judgment filed December 10, 1999. (Docket No. 94.) Plaintiff-Intervenor Colbro Ship Management Company Limited (Colbro) filed an intervening complaint, as owner *pro hac vice*, alleging that Levi Strauss wrongfully arrested the PHOENIX SPIRIT, a motor vessel




CIVIL 96-2190 (JAG)                                    2

owned by Pitea Shipping Company Limited (Pitea). (Docket No. 61.) In addition, Colbro also filed a motion for reimbursement of *custodia legis* expenses. (Docket No. 83.) On May 3, 2000, Colbro filed an opposition to Levi Strauss' motion seeking summary judgment, (Docket No. 115), followed by Levi Strauss' reply to Colbro's opposition. (Docket No. 126.)

## I. Standard of Review

Summary judgment is entered only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001); see Abbadessa v. Moore Bus. Forms, Inc., 987 F.2d 18, 22 (1st Cir. 1993). To find in favor of the defendants, this court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000); Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990); see Pérez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001).

In a motion for summary judgment, the moving party must demonstrate "an absence of evidence to support the nonmoving party's case" to discharge its burden of proof. Celotex Corp. v. Catrett, 477 U.S. at 325. Then the nonmoving party has the burden of showing that there is a factual disagreement. "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party." Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 332 (1st Cir. 1997) (quoting Leblanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993), cert. denied., 511

CIVIL 96-2190 (JAG)                                    3

U.S. 1018 (1994)). Plaintiff may not rely on "conclusory allegations, improbable inferences, and unsupported speculation." Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)); see Burns v. State Police Ass'n, 230 F.3d 8, 9 (1st Cir. 2000). Only at this point does the court construe material facts and reasonable inferences in favor of the non-moving party. Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997).

In the District Court of Puerto Rico, Local Rule 311.12 requires a motion for summary judgment to be accompanied by a separate, short and concise statement of material facts that supports the moving party's claim that there are no genuine issues of material fact in dispute. These facts are then deemed admitted until the nonmoving party provides a similarly separate, short and concise statement of material fact establishing that there is a genuine issue in dispute. Local Rules, United States District Court for the District of Puerto Rico, Local Rule 311(12) (Michie 1996); see Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 26 (1st Cir. 2000); Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727. See also Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001). These facts must be supported by specific reference to the record, thereby pointing the court to any genuine issues of material fact and eliminating the problem of the court having to "ferret through the Record." Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727; see Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 930-31 (1st Cir. 1983); Carmona Ríos v. Aramark Corp., 139 F. Supp. 2d 210 (D.P.R. 2001); Velázquez Casillas v. Forest Lab., Inc., 90 F. Supp. 2d 161, 163 (D.P.R. 2000). Failure to comply with this rule may result, where appropriate, in judgment in favor of the opposing party. Morales v. A.C. Orssleff's EFTF, 246 F.3d at 33; Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d at 927.

CIVIL 96-2190 (JAG)                    4

Colbro has failed to substantiate its statement of contested facts with "proper and specific references to the [R]ecord" as required by the anti-ferret rule. (Docket No. 115, Concise Statement of Facts.) Ríos v. Aramark Corp., 139 F. Supp. 2d at 215; Domínguez v. Eli Lilly & Co., 958 F. Supp. at 728. While some statements are in fact referenced, these references are only general in nature and fall short of compliance with the local rules. (Docket No. 115, Concise Statement of Facts, ¶¶ 1-4, 44.) Exhibit numbers and deposition page numbers are non-existent in Colbro's statement, thereby failing to guide the court through the record. "It is always prudent for the party opposing summary judgment to offer affidavits establishing the unresolved material disputes or at least to provide the court with memoranda indicating where in the record those disputes are evidenced. It is likewise irresponsible for a party's attorney to neglect to do so in a case where the record is at all sizeable or complex[,]" as in the present case. Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d at 930. Accordingly, conclusory assertions without specific references to the record in support, as provided by Colbro, will result in the uncontested facts submitted by Levi Strauss to be deemed admitted. Morales v. A.C. Orssleff's EFTF, 246 F.3d at 33; Ruiz Rivera v. Riley, 209 F.3d at 28; Domínguez v. Eli Lilly & Co., 958 F. Supp. at 728; see Ayala-Gerena v. Bristol Meyers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996).

## II. Factual Background

The present claims came about when Levi Strauss filed a complaint against the PHOENIX SPIRIT *in rem* for allegedly violating the Bill of Lading that governed the shipping of Levi Strauss' merchandise from Guatemala to Mississippi in October 1995. (Docket No. 109, at 2.) As Levi Strauss' shipment was being transported overland to the vessel by another company, DSL, the truck was allegedly hijacked by four armed bandits who stole the truck, trailer and entire shipment of goods. (Docket No. 105, at 5, ¶¶ 10-11.) This complaint resulted in the vessel's arrest on October 16, 1996 to satisfy payment

CIVIL 96-2190 (JAG)                              5

of the lost goods. (Docket No. 109, at 2.) While the ship was arrested, *custodia legis* expenses accrued under the care of a custodian ordered by this court. On December 12, 1996, Levi Strauss and Pitea, through its attorney-in-fact, William J. Coleman, reached a settlement agreement on Levi Strauss' claims, including payment of the *custodia legis* expenses. (Docket No. 19.) Colbro now seeks reimbursement for the payments it made to Pitea of those expenses as well as relief based on the alleged wrongful arrest of the vessel.

The following uncontested facts have been established:

1. Pitea Shipping Company Limited ("Pitea") is incorporated under the laws of Cyprus and owns the "PHOENIX SPIRIT" ("the vessel"). (Docket No. 94, at 2, ¶ 1.)

2. The common stock of Pitea is held in trust by two trustees. The single beneficiary of the Trust, Mr. Hotarapavanon, has the authority to direct the voting of the stock and the operations of the corporation. (Docket No. 94, at 2-3, ¶ 2.)

3. Mr. Hotarapavanon authorized brother-in-law, William J. Coleman ("Coleman"), as Pitea's agent, to direct and control the chartering of the vessel and manage the financial operations of Pitea. (Docket No. 94, at 3, ¶ 3.)

4. Coleman is the authorized representative and attorney-in-fact for Pitea with full authority to make management and operational decisions on behalf of Pitea. (Docket No. 94, at 3, ¶ 4.)

5. Colbro Ship Management ("Colbro") was organized as a company limited by shares through a memorandum of association filed in the Cayman Islands on October 8, 1992. (Docket No. 94, at 5, ¶ 14.)

6. Colbro managed the vessel, Pitea's only asset, under a bareboat charter contract with Pitea that was terminated on December 31, 1997. (Docket No. 94, at 23, ¶ 80.)

CIVIL 96-2190 (JAG)                                              6

7. As bareboat charterer Colbro was the owner *pro hac vice* of the vessel with quasi-owner perogatives of control and management of the vessel. (Docket No. 94, at 24, ¶ 84.) Colbro's duties in managing the vessel included its daily operations, all crewing needs, repairs, maintenance operations, and physical operations. (Docket No. 94, at 23, ¶ 82.)

8. Coleman did not report to anyone when he made a decision as to Colbro and is the only shareholder. (Docket No. 94, at 6, ¶¶ 19-20.)

9. The only business that Colbro engaged in during its existence was contracting the bareboat charter of the PHOENIX SPIRIT with Pitea, managing and operating the PHOENIX SPIRIT and contracting the time charter of that vessel. (Docket No. 94, at 7, ¶ 25.)

10. Under the terms of its bareboat charter of January 1, 1995, Colbro is required to "indemnify and hold harmless" Pitea from any and all claims arising in connection with loss or damage to cargo. (Docket No. 94, at 24, ¶ 85.)

11. Under the bareboat charter agreement, Colbro is responsible to Pitea for the payments to Levi Strauss under the settlement. (Docket No. 94, at 24, ¶ 86.)

12. In performing its duties as manager of the vessel, Colbro received documents for Pitea which were addressed to Pitea through Colbro's address. (Docket No. 94, at 24, ¶ 83.)

13. Coleman used Colbro to purchase the vessel insurance required by the settlement and to report on such insurance arrangements to Levi Strauss' attorney. (Docket No. 94, at 24, ¶ 87.)

14. Mr. Hotarapavanon executed a power of attorney on June 1, 1992, stating that "this document constitutes my authority given to Mr. William Coleman, with reference to any activity involving the M/V PHOENIX SPIRIT, to sign any document whatsoever on my behalf." (Docket No. 94, at 3, ¶ 6.)

CIVIL 96-2190 (JAG)                              7

15. Mr. Hotarapavanon executed another power of attorney on May 13, 1995, giving Coleman specific authority to "do all acts and to negotiate and agree and then sign all documents required for the purpose of purchase or sale of vessels by the company and for accepting title of purchased vessels and endorsing bills of sale of owned vessels." (Docket No. 94, at 3-4, ¶ 8.)

16. Through another power of attorney dated October 29, 1996, Coleman became the authorized agent and attorney-in-fact of Pitea by Mr. Hotarapavanon "pursuant to that power of attorney dated May 15, 1995 to retain counsel and take all steps necessary to protect and preserve the interest of the company in that motor vessel known as the PHOENIX SPIRIT including without limitation the filing of a petition under the Bankruptcy Code of the United States of America." (Docket No. 94, at 4, ¶ 8.)

17. Coleman had wire transfer authority and signature authority over Pitea's accounts with the Popular Bank in Cyprus. (Docket No. 94, at 5, ¶ 10.)

18. Coleman had sole check signing authority over Pitea's account from the Barnett Bank in Florida which was created to satisfy Bankruptcy Court requirements. (Docket No. 94, at 5, ¶ 12.)

19. On October 29, 1996, Pitea filed a claim of owner in this case, sworn by William J. Coleman as attorney-in-fact for Pitea, and subscribed by the law firm of Jiménez, Graffam & Lausell.[1] (Docket No. 94, at 11, ¶ 40.)

---

[1] Immediately after the court arrested the vessel, Pitea and Colbro filed voluntary Chapter XI petitions in the Florida Bankruptcy Court for both Pitea, as the owner of the ship, and Colbro, as the bareboat charter operator of the ship. On the same date, Colbro and Pitea filed a motion for the joint administration of their bankruptcy cases in the Florida Bankruptcy Court, which was granted by order on November 4, 1996, and a Motion of Jointly Administered Debtors for Approval of Terms of Bond. (Docket No. 94, at 11, ¶¶ 42-43.)

CIVIL 96-2190 (JAG)                              8

20. Coleman was the only corporate representative of Pitea who participated in the decision-making related to all aspects of the bankruptcy proceedings. (Docket No. 94, at 10, ¶ 37.)

21. What Coleman did on behalf of Pitea and Colbro in the bankruptcy proceedings in Florida and the litigation in Puerto Rico was up to him. (Docket No. 94, at 11, ¶ 39.)

22. The motion for approval of terms of bond requested an emergency hearing and a determination from the Bankruptcy Court that the security proposed by Colbro and Pitea proved adequate for the release of the PHOENIX SPIRIT. (Docket No. 94, at 12, ¶ 44.)

23. This motion was based on Colbro and Pitea's "extremely exigent circumstances," including that:

   i. The sole income of Colbro and Pitea was derived from the operation of the vessel under a time charter agreement with Marine Express, Inc.;

   ii. Marine Express allegedly lost $71,250.00 in revenue from the arrest of the vessel to October 31, 1996;

   iii. If the vessel was not free to sail on November 1, 1996, Marine Express indicated its intent to secure a substitute vessel and hold Colbro liable for damages incurred by Marine Express.

   iv. With the vessel operating under the time charter agreement Colbro and Pitea could timely pay their creditors and remain in operation;

   v. Unless Colbro and Pitea obtained the release of the vessel, they would have no income and could not pay any creditors;

   vi. Should the vessel be sold under an Interlocutory Order from this court, Pitea and Colbro would cease to have any viable operations.
   (Docket No. 94, at 12-13, ¶ 45.)

CIVIL 96-2190 (JAG)                                    9

24. In the motion Colbro and Pitea requested that the Bankruptcy Court make a determination that the following security they were proposing adequately authorized the release of the vessel:

   i. Pitea was to provide a first lien on the vessel to secure *custodia legis* expenses, seaman's claims and the claim of Levi Strauss;

   ii. Colbro would pledge a first lien on the time charter payments from Marine Express;

   iii. Colbro would fund an escrow of $20,000.00 from the revenues generated by the time charter with Marine Express.

   (Docket No. 94, at 13-14, ¶ 49.)

25. Coleman appeared at the hearing on motion for approval of terms of bond's release the vessel on November 5, 1996 on behalf of both Colbro and Pitea. (Docket No. 94, at 14, ¶ 50.)

26. The Bankruptcy Court denied the motion for terms of bond, providing that both debtors were free "to litigate the amount, terms and conditions of the bond required for the release" of the vessel in the Puerto Rico proceedings and lifted the automatic stay for that purpose. (Docket No. 94, at 16, ¶ 56.)

27. A settlement was negotiated between Coleman, William Graffam, Eric Miller, his bankruptcy attorney and Robert Bell, the Florida attorney for Levi Strauss, after they left the courtroom where the hearing of November 5, 1996 was held. (Docket No. 94, at 17, ¶ 59.)

28. Coleman had the control and the power to decide whether to include or not include Colbro as a named party in the Agreed Final Judgment. He chose not to do so. (Docket No. 94, at 17, ¶ 60.)

29. The draft of the Final Judgment included Levi Strauss, the PHOENIX SPIRIT and Pitea as the named parties in paragraph 1, and also required a full and

CIVIL 96-2190 (JAG)                           10

timely compliance by the "officers, directors, corporate representatives, agents, employees and all servants" of Pitea, "with all of the agreed terms and conditions of this judgment." (Docket No. 94, at 19, ¶ 65.)

30. Coleman used Colbro's letterhead to forward an insurance certificate required by the settlement, naming Fireman's Fund and Levi Strauss as additional assureds, to Eric Miller. (Docket No. 94, at 19, ¶ 66.)

31. On that date, Coleman also forwarded a facsimile on Colbro's letterhead to Robert Bell stating insurance information required by the settlement and making reference to "our final agreement" in its last paragraph. (Docket No. 94 at 20, ¶ 68.)

32. Colbro and Pitea sought parallel approval of the Final Judgment in the Bankruptcy Court and the Puerto Rico District Court. Also on November 19, 1996, Levi Strauss and Pitea filed a Joint Motion Requesting the Conditional Approval of Security and Release of the Vessel in the Puerto Rico proceedings, during the period that the Florida Bankruptcy Court was considering approval of the proposed Final Judgment subject to the vessel remaining under the jurisdiction of the Puerto Rico District Court by sailing with a representative of the custodian on board. The court granted this motion. (Docket No. 94, at 21, ¶ 71; Docket No. 19.)

33. The settlement payments to Levi Strauss were covered from the time-charter hire payments made by Marine Express to Colbro, who in turn paid bareboat charter hire payments to Pitea. (Docket No. 94, at 22, ¶ 75.)

34. On December 9, 1996, the Bankruptcy Court entered an order in the consolidated Colbro/Pitea bankruptcy cases approving the settlement and entry of the proposed Final Judgment by the Puerto Rico District Court. (Docket No. 94, at 22, ¶ 77.)

CIVIL 96-2190 (JAG)                                           11

### III. Res Judicata

As to both the wrongful arrest and *custodia legis* expenses claims, Levi Strauss raises a defense of *res judicata*, claiming that the settlement agreement between Levi Strauss and Pitea binds Colbro as a non-party in privity. The principle of *res judicata* establishes that "a final judgment on the merits of an action precludes the parties and their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980); González v. Banco Central Corp., 27 F.3d 751, 755 (1st Cir. 1994). *Res judicata* also aims to prevent "plaintiffs from splitting their claims by providing a strong incentive for them to plead all factually related allegations and attendant legal theories for recovery the first time they bring suit." Apparel Art Intern., Inc. v. Amertex Enterprises Ltd. 48 F.3d 576, 583 (1st Cir. 1995); Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1166 (1st Cir.), cert. denied., 502 U.S. 816 (1991).

*Res judicata* requires "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." In re Iannochino, 242 F.3d 36, 43 (1st Cir. 2001); Massachusetts Sch. of Law v. American Bar Assoc., 142 F.3d 26, 37 (1st Cir. 1998); González v. Banco Central Corp., 27 F.3d at 755; Kale v. Combined Ins. Co. of Am., 924 F.2d at 1165. In the instant case, it is uncontested that the agreed final judgment in the first suit was a final judgment on the merits as "the parties ... requested the Bankruptcy Court to approve and the District Court to enter a judgment implementing the settlement on an irrevocable basis ...." (Docket No. 19.) I then focus on the two last requirements, identity of causes of action and identicality of parties.

When two separate suits involve sufficiently identical causes of action arising from the "same operative nucleus of fact," a judgment in the earlier action precludes litigation of claims in a subsequent action. See Apparel Art Int'l, Inc. v. Amertex Enters. Ltd., 48 F.3d at 584; González v. Banco Central Corp., 27 F.3d at 755; Kale v. Combined Ins. Co.

CIVIL 96-2190 (JAG)                                    12

of Am., 924 F.2d at 1666. Identicality of causes in a *res judicata* defense is established by employing the transactional approach. Id.; see Manego v. Orleans Bd. of Trade, 773 F.2d 1, 5 (1st Cir. 1985), cert. denied, 475 U.S. 1084 (1986). What constitutes a "transaction" is established by factors such as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." Porn v. National Grange Mut. Ins. Co., 93 F.3d 31, 34 (1st Cir. 1996); see also Aunyx v. Cannon U.S.A., Inc., 978 F.2d 3, 7 (1st Cir. 1992), cert. denied, 507 U.S. 973 (1993).

Colbro seeks relief from claims arising out of "a single core of operative facts." Although the principal wrongful arrest and *custodia legis* expenses claims in the present suit are based on a new legal theory, the focus for *res judicata* is on "whether the underlying facts of both transactions were the same or substantially similar." Kale v. Combined Ins. Co. of Am., 924 F.2d at 1166; Manego v. Orleans Bd. of Trade, 773 F.2d at 6. A mere change in legal theory does not create a new cause of action and so long as the "'new complaint grows out of the same 'transaction or series of connected transactions' as the old complaint,' ... the causes of action are to be considered identical for *res judicata* purposes." Kale v. Combined Ins. Co. of Am., 924 F.2d at 1166; see Isaac v. Schwartz, 706 F.2d 15, 16 (1st Cir. 1983); Manego v. Orleans Bd. of Trade, 773 F.2d at 6.

Here, all claims derive from the shipment agreements entered into by Levi Strauss, Pitea, and Colbro for October 1995 as well as the subsequent arrest of the vessel by the court. Colbro now seek recovery for issues already resolved or that could have been resolved in the previous litigation. The differences are differences of legal theory, not differences in the fundamental cause of action. Kale v. Combined Ins. Co. of Am., 924 F.2d at 1166. All claims are based on the arrest of the vessel and how that arrest was carried out. Each claim may concedingly stem from a different specific detail of the arrest, but ultimately, they are based on the same transaction —the arrest of the vessel for

CIVIL 96-2190 (JAG)                    13

satisfaction of the previous court's ruling. So while Colbro's claims are disguised "in somewhat different garb, the claims all sought recovery in consequence of the same occurrence" and are now barred from relitigation. Kale v. Combined Ins. Co. of Am., 924 F.2d at 1166.

Levi Strauss claims that the identicality of parties prong of *res judicata* is fulfilled. Colbro was in privity with Pitea at the time of the Final Judgment in the first suit since Coleman dually represented both parties and was present at all pertinent court proceedings. (Docket No. 94, at 45.) *Res judicata* precludes parties and their privies from contesting matters when they have had a full and fair opportunity to litigate. Montana v. United States, 440 U.S. 147, 154 (1979). Privity may be established through identification of interests even where representation of those interests was not authorized.[2] In re Medomak Canning, 922 F.2d 895, 901 (1st Cir. 1990); see Montana v. United States, 440 U.S. at 154 (if "non parties assume control over litigation in which they have direct financial or proprietary interest and then seek to redetermine issues previously resolved[,]" then they are in privity and may be barred from relitigating those issues). Even if Colbro claims that Coleman only represented Pitea in the prior proceedings, both companies had a vested interest in paying the least amount of *custodia legis* costs, thus Colbro had a direct financial interest in the outcome of the first suit. Therefore, even if Coleman was not "authorized" to act in Colbro's behalf, identity of interests is equivalent to privity for purposes of determining the applicability of res judicata. Id.

Privity is also implicated when non-parties "either substantially controlled a party's involvement in the initial litigation or conversely, permitted a party to the initial litigation to function as his de facto representative." In re Iannochino, 246 F.3d at 46; see Montana

---

[2] Privity works as an exception to the rule that *res judicata* only bars relitigation of claims by persons who were parties to the original litigation. González v. Banco Central Corp., 22 F.3d at 757.

CIVIL 96-2190 (JAG) 14

v. United States, 440 U.S. at 154. Substantial control over a party's involvement in litigation, as used for res judicata purposes, means "the power -- whether exercised or not -- to call the shots." González v. Banco Central Corp., 27 F.3d at 758. It is also the right to exercise effective choice as to the legal theories and proofs used and how they are to be advanced. Id. Based on this standard, Coleman and Colbro were in privity. As the sole authorized representative in all the previous court proceedings for Colbro, Pitea and Coleman, in his individual capacity, Coleman "called the shots" and "exercised choice as to the legal theories advanced" at all times. (Docket No. 94, at 10-11, 17, ¶¶ 37, 39, 60.) He decided how bankruptcy issues should be presented to the court, (Docket No. 94, at 11, ¶ 39), when and how Pitea and Colbro should resolve claims with Levi Strauss, (Docket No. 94, at 14, ¶ 50), and finally, if and when settlement agreements should be accepted. (Docket No. 94, at 17, ¶ 59.) Additionally, Coleman has stated that he had complete authority over whether to include Colbro by name in the final judgment. (Docket No. 94, at 17, ¶ 60.) This choice of legal strategy evidences his substantial control and constant involvement in all pertinent litigation.

Moreover, while Coleman may claim that he was present in the previous litigation only as Pitea's legal representative, as the sole director and decision-making authority of Colbro, he could have brought the present claim at that time. Based on the bareboat charter of January 1, 1995, it is evident that Colbro would be required to pay whatever amount Pitea and Levi Strauss based their settlement agreement on since Colbro is "required to indemnify and hold [Pitea] harmless" from any claims related to loss or damage of cargo. (Docket No. 94, at 24, ¶ 85.) Having such intimate knowledge of all the court proceedings, Coleman should have anticipated Colbro's future desire to reclaim the *custodia legis* costs and could have brought his claim as part of the earlier suit, barring the present claims.

CIVIL 96-2190 (JAG)                                           15

Even assuming *arguendo* that Coleman did not in fact maintain substantial control of the earlier suit, Pitea can be seen as the *de facto* representative of Colbro.[3] In the alternative to finding that there was indeed substantial control of the litigation by the non-party, parties with similar interests may be barred by *de facto* or virtual representation. Pérez v. Volvo Car Corp., 247 F.3d at 311. Colbro argues that Coleman acted solely in his capacity as attorney-in-fact for Pitea when he participated in the settlement agreement with Levi Strauss, thereby not implicating Colbro in any way. (Docket No. 115, at 58.)

To find that Coleman acted as a *de facto* representative, there must be an identity of interests as was established above for identity of party purposes. However, in order to find virtual representation, there must be something more than "mere confluence of interests." Pérez v. Volvo Car Corp., 247 F.3d at 312. For non-party claim preclusion to operate, the party urging preclusion must demonstrate at bare minimum, "that the plaintiff in the second suit had notice of, and an opportunity to participate in, the earlier suit. ... Put another way, the doctrine of virtual representation cannot be used to bar the claim of a person who was not a party to the earlier suit unless that person, at the least, had actual or constructive notice of the earlier suit and, thus, a chance to join it." Id. Other factors considered in finding virtual representation include "a close relationship between the prior and present parties; participation in the prior litigation; apparent acquiescence; and whether the present party deliberately maneuvered to avoid the effects of the first action." Petit v. City of Chicago, 766 F. Supp. 607, 612 (N.D. Ill. 1991); see González v. Banco Central Corp., 27 F.3d at 760.

Due to Coleman's actual participation in the earlier suit, notice is uncontested. (Docket No. 115, at 58). Since he solely controlled the degree of involvement of both

---

[3] As a legal representative of Pitea, Coleman is also barred from relitigating these claims for Colbro based on the Final Judgment which made the terms and conditions of the agreement binding on "officers, directors, corporate representatives, agents and employees and/or servants, or others [of the parties]." (Docket No. 19, at 3, ¶ 11).

CIVIL 96-2190 (JAG) 16

Pitea and Colbro in the earlier suit, Coleman permitted Pitea's decision-making authority, Coleman himself, to function as the *de facto* representative of Colbro in the same. Not only did Colbro have notice of the earlier suit, it consciously declined Levi Strauss' suggestion to join in. (Docket No. 93, at 161-163). As reasoned by the court in Gonzalez v. Banco Central Corp., "[w]e do not understand why a non-party who comes within the doctrinal framework for virtual representation--a framework in which party and non-party share identical interests, and that provides for notice and a weighing of equitable considerations--should be treated differently from a party in this regard." González v. Banco Central Corp., 27 F.3d at 762 n.12. Colbro fulfills all these elements of virtual representation, sharing identical interests with Pitea and having had actual notice of the previous litigation. Based on this reasoning, Colbro has failed to produce evidence that it did not have a full and fair opportunity to litigate the present claim in the previous suit.

IV. Conclusion

The purpose of *res judicata*, encouraging reliance on adjudication, preventing inconsistency of decisions, and relieving parties of the cost and vexation of multiple lawsuits among other things, would be "robbed of its doctrinal significance" if the court were to address plaintiff's present claims. In re Iannochino, 242 F.3d at 41; Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc., 181 F.3d 174, 181 (1st Cir. 1999); see Kale v. Combined Ins. Co. of Am., 924 F.2d at 1166. Therefore, since Coleman as a "non-party" participated vicariously in the original litigation by exercising control over a named party —Pitea— and had the opportunity to exert such control, then Colbro effectively enjoyed its day in court, and it is appropriate to impute to it the legal attributes of party status for purposes of claim preclusion. González v. Banco Central Corp., 27 F.3d at 758; see United States v. Bonilla Romero, 836 F.2d 39, 44 (1st Cir. 1987), cert. denied, 488 U.S. 817.

Since Colbro's claims could have been previously litigated and resolved, I recommend that Levi Strauss' motion for summary judgment be **GRANTED** (Docket No.

CIVIL 96-2190 (JAG)                                    17

94) and that Colbro's Intervening Complaint be DISMISSED with prejudice. I also recommend that the motion of Colbro requesting an award of *custodia legis* expenses (Docket Nos. 23, 83) be DENIED. This would render plaintiff Levi Strauss' motion for award of *custodia legis* expenses filed in the alternative, Docket No. 27, MOOT.

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 20th day of August, 2001.

/JUSTO ARENAS
United States Magistrate Judge